UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHALECSHA MOORE,

                       Plaintiff,              Civil Action No. 13-11831
                                                 Honorable Robert H. Cleland
v.                                            Magistrate Judge David R. Grand

MILLICENT WARREN, JODI
DeANGELO, DR. PEI, R.N.
OZOR, and SUBRINA AIKENS,

                       Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT DeANGELO'S MOTION FOR PARTIAL DISMISSAL AND SUMMARY JUDGMENT [56]**

Before the Court is a Motion for Partial Dismissal and Summary Judgment filed on May 30, 2014, by Defendant Jodi DeAngelo ("DeAngelo"), an employee of the Michigan Department of Corrections ("MDOC"). (Doc. #56). Plaintiff Shalecsha Moore ("Moore") filed a response to this motion on August 14, 2014. (Doc. #70). No reply was filed.

An Order of Reference was entered on July 1, 2013, referring all pretrial matters to the undersigned pursuant to 28 U.S.C. §636(b). (Doc. #10). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody. *See* E.D. Mich. L.R. 7.1(f). Here, the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and it declines to order a hearing at this time.

**I.    REPORT**

    **A.    Background**

        *1.    Procedural History*

Moore is a State of Michigan prisoner who is confined at the Women's Huron Valley Correctional Facility ("WHV") in Ypsilanti, Michigan. (Doc. #1 at 3). Moore brought this civil

rights action pursuant to 42 U.S.C. §1983 against MDOC employees Jodi DeAngelo, Millicent Warren, Catherine Ozor, and Subrina Aiken, as well as Dr. Claire Pei, an employee of Prison Health Services. (Doc. #1). Generally speaking, Moore alleges that while being held at WHV in segregation, she experienced severe and ongoing pelvic and abdominal pain, which she claims was not timely and properly treated despite her repeated requests for medical attention.

On October 9, 2013, this Court issued a Report and Recommendation ("R&R") recommending that summary judgment be granted in favor of MDOC Defendants Warren, Ozor, and Aiken. (Doc. #21). As discussed in greater detail below, the Court also recommended that DeAngelo's motion for summary judgment be denied without prejudice. (*Id.*). That R&R was adopted by the Honorable Patrick J. Duggan on December 24, 2013. (Doc. #27). Thus, Dr. Pei and DeAngelo are the sole remaining defendants in this action. DeAngelo now moves for partial dismissal and summary judgment.[1]

2.   *The Allegations in Moore's Complaint*

In her complaint, Moore alleges that, on August 27, 2011, September 19, 2011, and September 21, 2011, while in administrative segregation ("A-Seg") at WHV, she sent "kites" to prison healthcare indicating that she was suffering from pelvic and abdominal pain, and requesting an appointment with a doctor. (Doc. #1 at ¶¶2, 4, 6; pp. 15-17). Moore further alleges that, on September 22, 2011, she received a kite response, indicating that she would be scheduled for a visit with a physician on approximately September 23, 2011. (*Id.* at ¶7). Apparently Moore was not seen by a physician on that date; however, she was seen by Dr. Pei just five days later, on September 28, 2011, and prescribed an antibiotic for what Dr. Pei

---

[1] Dr. Pei also has filed a motion for summary judgment, which is the subject of a separate Report and Recommendation. (Doc. #74).

2

believed to be a continuing (or recurring) case of bacterial vaginitis ("BV").[2] (Doc. #8 at Ex. 3, ¶4).

In her complaint, Moore does not allege that DeAngelo, the Deputy Warden at WHV, actually denied her requests for medical care; rather, Moore asserts only that she named DeAngelo in prison grievances she filed regarding this issue in the hope that she would rectify the situation. (Doc. #1 at ¶¶10, 11, 15, 29). For example, while Moore alleges in her complaint that, on September 25, 2011, she filed a grievance against DeAngelo (and Warren, Ozor, and Dr. Pei) for denying her request to be seen by a medical service provider ("MSP") while in prison segregation, (*id.* at ¶10), she further explains that the purpose of filing this grievance was "to bring the matter to the attention of the medical staff and responsible [sic] for failing to schedule plaintiff to be seen by MSP." (*Id.*). The only other allegation in Moore's complaint pertaining to DeAngelo is that she failed "to take displinary [sic] or other action to curb the known pattern of inadequate medical care to segregation prisoners…." (*Id.* at ¶32).

### 3. *Moore's Subsequent Allegations Against DeAngelo*

In its prior R&R, this Court found that Moore's complaint failed to allege the requisite level of personal involvement on the part of DeAngelo. (Doc. #21 at 11-12). The Court further noted, however, that in response to the MDOC Defendants' motion for summary judgment, Moore made several additional allegations against DeAngelo. Specifically, Moore alleged for the first time that, while she was in A-Seg, DeAngelo "made several rounds … where she physically seen [sic] and spoke with plaintiff regarding obgyn [sic] issues. DeAngelo physically seen [sic] plaintiff lying on the floor several times unable to move due to pain in vagina." (Doc. #16 at 10). Later in her response brief, Moore asserted:

---

[2] Apparently, Dr. Pei had previously examined Moore on August 16, 2011. At that time, Dr. Pei diagnosed Moore with BV and prescribed an antibiotic. (Doc. #1 at ¶27; Doc. #8 at Ex. 3, ¶4).

3

> … DeAngelo ignored repeated requests for medical treatment made by plaintiff. Plaintiff spoke directly to DeAngelo during her "Segragation [sic] visual rounds." Exact times can be found in "daily log" book for staff. DeAngelo told plaintiff "she would not be taken out of segregation [sic] for any reason until her time is served." Plaintiff begged DeAngelo to send her to get pelvic exam done, DeAngelo was able to physically see plaintiff in extreme pain.

(*Id.* at 18). Although the Court noted the somewhat suspect nature of these allegations because Moore had not included them in either the grievance she filed against DeAngelo or in her original complaint, DeAngelo failed to respond to the allegations, and Moore was permitted to amend her complaint to include them. (Doc. #21 at 12-14; Doc. #27 at 6).

Consequently, on October 21, 2013, Moore filed an amended complaint in which she asserted that, "DeAngelo made several rounds during both plaintiff stays in the segragation [sic] department where she physically seen [sic] and spoke with plaintiff regarding OBGYN issues. DeAngelo physically seen [sic] plaintiff lying on the floor several times unable to move due to pain in vagina." (Doc. #23 at ¶8). Moore also alleged – for the first time – that DeAngelo "knew or should have known that staff constantly failed to utilize clinic area in the housing unit for segragated [sic] prisoners with serious medical needs, and staff regularly refused to escort prisoners to on-site health care clinic per policy 03.04.100(AAA) thereby creating a 'custom' of denying and or delaying medical attention." (*Id.* at ¶5).

### B.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists,

the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

**C. Analysis**

In her motion, DeAngelo argues that summary judgment is appropriate because Moore failed to properly exhaust her administrative remedies, and because there is no genuine issue of material fact as to DeAngelo's lack of personal involvement in any alleged wrongdoing.[3] (Doc. #56). These arguments will be addressed in turn.

*1. Moore Failed to Exhaust Her Administrative Remedies with Respect to Her Claim Against DeAngelo*

---

[3] DeAngelo also moves for partial dismissal, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), on the grounds that Moore's "official capacity" claim against her is barred by Eleventh Amendment immunity. (Doc. #56 at 22-28). The Court need not address the merits of this argument because it recommends granting summary judgment as to all of Moore's claims against DeAngelo on other grounds.

5

In her motion, DeAngelo first argues that Moore failed to properly exhaust her administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e(a). (*Id.* at 13-18). The Court agrees.

Under the PLRA, a prisoner may not bring an action, "under [§1983] or any other Federal law," to challenge her conditions of confinement until all available administrative remedies have been exhausted. 42 U.S.C. §1997e(a); *see also Woodford v. Ngo*, 548 U.S. 81, 85 (2006). This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court. *See Woodford*, 548 U.S. at 89. The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93. Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

In determining whether a plaintiff has properly exhausted her claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200. In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy"). (Doc. #56 at Ex. 2). A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance process" – before she can file a lawsuit challenging the alleged unlawful conduct. (*Id.* at ¶B). If the prisoner cannot resolve her dispute with the staff member involved, she has five business days to file a Step I grievance. (*Id.* at ¶¶P,

6

V). "Information provided [in the Step I grievance] is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). **Dates, times, places, and names of all those involved in the issue being grieved are to be included**." (*Id.* at ¶R (emphasis added)). If the prisoner is dissatisfied with the Step I response, she may submit a Grievance Appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶BB). If the grievant is dissatisfied with, or does not receive, a Step II response, she has ten business days within which to file a final appeal at Step III. (*Id*. at ¶FF). The Policy further provides that a grievance may be rejected if it is vague, illegible, duplicative, or untimely. (*Id.* at ¶¶G, R).

In this case, Moore admits that she filed only one grievance that names DeAngelo: Grievance No. WHV-12-09-4451-28B. (Doc. #56-2 at 15, 34). In that grievance, Moore indicated that she was grieving DeAngelo (and others) "for failure to oversee and provide adequate medical attention …." (*Id.* at 34). This grievance, which Moore dated "9-25-11," and which listed a date of incident of "9-19-11," was not received at Step I until September 18, 2012, nearly one year after the alleged incident in question. (*Id.*). It was rejected at Step I as "vague," with an additional notation asking: "When? What was not provided?" (*Id.*). Moore appealed this grievance to Step II, providing no further detail regarding her allegations, but stating only that DeAngelo "was fully aware of [the alleged health care issues] from Healthcare request forms." (*Id.* at 35). This appeal, which was received at Step II on October 10, 2012, was denied on November 27, 2012, as vague, indicating that "the incident is not clearly described." (*Id.* at 35-36). This denial was upheld at Step III on April 11, 2013. (*Id.* at 37).

7

As an initial matter, even assuming that this grievance was timely filed,[4] Moore did not properly exhaust her administrative remedies, because, in filing a grievance that was unduly vague, she did not comply with the Policy's procedural rules. *See, e.g., Woodford*, 548 U.S. at 90; *Colston v. Cramer*, 2007 WL 1655413, at *2 (E.D. Mich. June 7, 2007) (finding failure to exhaust where grievance was rejected as vague and untimely); *Fuqua v. Straub*, 2009 WL 2602427, at *4 (E.D. Mich. Aug. 19, 2009) ("an untimely or otherwise improper grievance, even though appealed through all steps of a grievance procedure, does not fulfill the PLRA exhaustion requirement."). Moore's Step I grievance is about as vague as a grievance could be. Although it provides information as to the "who" (DeAngelo) and "when" (September 19, 2011), it is extremely vague in terms of the "what" ("failure to oversee and provide adequate medical attention …."), and provides absolutely no information whatsoever about the "how" or "why." (Doc. #56 at Ex. 2, ¶R; #56-2 at 34). Moore cannot overcome this shortcoming by simply referring in the grievance to her alleged "original complaint," presumably her August 27, 2011 healthcare request form, which fails to mention DeAngelo. (Doc. #1 at 15; #56-2 at 34). Because Moore's grievance provides no detail whatsoever as to why or how she believed DeAngelo violated her rights, it fails to satisfy the Policy's exhaustion requirements. *See Colston*, 2007 WL 1655413, at *2.

---

[4] It certainly appears that this grievance – which, again, was the only grievance filed by Moore against DeAngelo – was untimely. Although Moore dated the grievance "9-25-11," it was not received at Step I until September 18, <u>2012</u>. (Doc. #56-2 at 34). Pursuant to the Policy, a grievance must be filed within five business days of the prisoner's attempt to resolve the dispute with the staff member (an attempt that Moore indicated took place on September 19, 2011). (Doc. #56 at Ex. 2, ¶¶P, V; Doc. #56-2 at 34). Stanley Bragg, the Grievance Coordinator at WHV, submitted an affidavit in which he clearly stated that this grievance was untimely because it "was filed on September 18, 2012, per the date stamp on the Step I grievance and a 2012 grievance number was assigned to the grievance because it was filed in September 2012." (Doc. #56 at Ex. D, ¶3). Although this evidence suggests that Moore's grievance was untimely, it was not rejected on this basis but, rather, was rejected as vague. Thus, for purposes of this motion, the Court will assume that the grievance was timely filed.

Moore's grievance fails for other reasons, as well. Moore only grieved DeAngelo for "failure to *oversee* and provide adequate medical attention,"[5] (Doc. #56-2 at 34) (emphasis added), not for the separate and distinct conduct she raised for the first time in response to DeAngelo's first motion for summary judgment (and, subsequently, in her amended complaint). As noted above, Moore now alleges that DeAngelo made rounds when she was in A-Seg, observed Moore "unable to move due to pain in [her] vagina," and spoke with Moore about her pelvic pain. (Doc. #23 at ¶8). Nowhere in Moore's grievance, however, does she assert any of these facts. (Doc. #56-2 at 34). Nor did Moore articulate these allegations in her Step II appeal, where she said only that DeAngelo was "fully aware [] *from Healthcare request forms*" that she had "requested healthcare medical attention." (*Id.* at 35) (emphasis added).

Because Moore did not allege in her grievance that DeAngelo made rounds in A-Seg, where she observed Moore in pain and spoke with her "regarding OBGYN issues," her amended complaint's claim based on that alleged conduct is unexhausted and should be dismissed. *See, e.g., Washington v. Johnson*, 2011 WL 5375189, at *4 (E.D. Mich. Nov. 4, 2011) (plaintiff failed to properly exhaust her claims where there was no evidence that grievances "actually mentioned the mistreatment allegations the plaintiff raised in her court papers"); *Ward v. Luckey*, 2013 WL 5595350, at *2 (E.D. Mich. Oct. 11, 2013) (grievance was insufficient to exhaust with respect to claims asserted in the complaint where grievance complained that defendant called plaintiff into the library during his yard time and complaint alleged First Amendment violation based on his

---

[5] To the extent that Moore has properly exhausted this particular claim against DeAngelo, it fails as a matter of law. The law is clear that a supervisory official's awareness of a complaint of allegedly illegal conduct, and her subsequent failure to take corrective action, is insufficient to trigger §1983 liability. *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988). Here, even viewed in the light most favorable to Moore, these particular allegations are an attempt to improperly impose *respondeat superior* on DeAngelo. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

right to access the library in retaliation for past grievances).

>     2.   *Even if Moore Had Properly Exhausted Her*
>          *Administrative Remedies, Summary Judgment is Appropriate*

Exhaustion aside, summary judgment is appropriate on Moore's Eighth Amendment claim that DeAngelo was deliberately indifferent to her serious medical needs. The Sixth Circuit recently explained the standards that a plaintiff must satisfy to state a claim for deliberate indifference:

> A claim of deliberate indifference under the Eighth Amendment has both an objective and a subjective component. The objective component requires the existence of a sufficiently serious medical need. To satisfy the subjective component, the defendant must possess a "sufficiently culpable state of mind," rising above negligence or even gross negligence and being "tantamount to intent to punish." Put another way, "[a] prison official acts with deliberate indifference if he knows of a substantial risk to an inmate's health, yet recklessly disregards the risk by failing to take reasonable measures to abate it." Mere negligence will not suffice. Consequently, allegations of medical malpractice or negligent diagnosis and treatment generally fail to state an Eighth Amendment claim of cruel and unusual punishment.

*Broyles v. Correctional Medical Servs., Inc.*, 478 F. App'x 971, 975 (6th Cir. 2012) (internal citations omitted). Moreover, a plaintiff must demonstrate that a prison official knew of and disregarded an excessive risk to inmate health or safety by showing that (1) the official was aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and (2) the official actually drew the inference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In her original complaint, Moore did not allege that DeAngelo actually received or denied her requests for medical care. Rather, Moore asserted that she filed a grievance against DeAngelo in order to "bring the matter to [her] attention" and that Moore failed "to take displinary [sic] or other action to curb the known pattern of inadequate medical care to segregation prisoners …." (Doc. #1 at ¶¶10, 32). This Court recognized in its prior R&R that,

even viewed in the light most favorable to Moore, these allegations are nothing more than an attempt to improperly impose *respondeat superior* liability on an individual who did not herself directly participate in the alleged improper care. (Doc. #21 at 7-8, 11-12). Again, then, the allegations in Moore's original complaint do not establish the requisite level of "personal involvement" required to impose §1983 liability against DeAngelo. *See, e.g., Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988) (a plaintiff's "mere claim" that defendants were aware of the alleged misconduct, but did not then take appropriate action, is insufficient to impose liability on supervisory personnel under §1983).

In an effort to overcome this shortcoming, Moore made several additional allegations against DeAngelo in her response to the MDOC Defendants' previously-filed motion for summary judgment. Specifically, Moore alleged that, while she was in segregation, DeAngelo "made several rounds during both [of] plaintiff['s] stays in the segragation [sic] department where she physically seen [sic] and spoke with plaintiff regarding obgyn [sic] issues. DeAngelo physically seen [sic] plaintiff lying on the floor several times unable to move due to pain in vagina." (Doc. #16 at 10). Moore repeated these allegations in her subsequently-filed amended complaint. (Doc. #23 at ¶8). In her response brief, Moore also asserted:

> … DeAngelo ignored repeated requests for medical treatment made by plaintiff. Plaintiff spoke directly to DeAngelo during her "Segragation [sic] visual rounds." Exact times can be found in "daily log" book for staff. DeAngelo told plaintiff "she would not be taken out of segregation [sic] for any reason until her time is served." Plaintiff begged DeAngelo to send her to get pelvic exam done, DeAngelo was able to physically see plaintiff in extreme pain.

(Doc. #16 at 18).

As this Court noted in its prior R&R, these allegations of DeAngelo's purported wrongdoing are suspect, given that Moore *never raised them* until the MDOC Defendants moved for summary judgment, arguing that she had not alleged the requisite level of personal

11

involvement on the part of DeAngelo (and others). Only then did Moore accuse DeAngelo of seeing her "lying on the floor … unable to move due to pain in her vagina," and ignoring her "repeated requests for medical treatment." (*Id.* at 10, 18).

Moore had also indicated that the prison's daily logbooks would provide support for these new allegations against DeAngelo. However, just the opposite is true. The record evidence now before the Court shows that Moore has failed to raise a question of material fact as to these new allegations. For example, Moore asserts in her amended complaint that, during rounds, DeAngelo spoke with her regarding her "obgyn [sic] issues" during *both* of her stays in A-Seg (from August 23, 2011 through August 30, 2011, and from September 11, 2011 through October 9, 2011). (Doc. #23 at ¶8). At her deposition, however, Moore admitted that she did not speak with DeAngelo at all during her first A-Seg stint. (Doc. #56 at Ex. 1, p. 50-51). DeAngelo also submitted an affidavit, in which she confirmed this fact. (*Id.* at Ex. 3, ¶¶3-6). Thus, the record evidence contradicts Moore's allegation that she complained to DeAngelo about her pelvic pain during August 2011.

All that remains, then, are Moore's allegations stemming from her second stint in A-Seg, from September 11, 2011, to October 9, 2011. In her response to the MDOC Defendants' prior motion for summary judgment, Moore was quite specific that:

> … DeAngelo ignored repeated requests for medical treatment made by plaintiff. Plaintiff spoke directly to DeAngelo during her "Segregation [sic] visual rounds." Exact times can be found in "daily log" book for staff. DeAngelo told plaintiff "she would not be taken out of segragation [sic] for any reason until her time is served." Plaintiff begged DeAngelo to send her to get pelvic exam done, DeAngelo was able to physically see plaintiff in extreme pain.

(Doc. #16 at 18). At her deposition, however, Moore backpedaled from her assertions that she made "repeated requests" for medical treatment to DeAngelo. Instead, Moore testified that she

12

had only <u>one</u> conversation[6] with DeAngelo during this timeframe, and, despite detailed questioning, she was unable to recall when that conversation took place (date, day of the week, shift, or time of day), what cell she was in at the time of the alleged conversation, whether there were any witnesses, or any other verifiable details. (Doc. #56 at Ex. 1, pp. 32-35). In contrast, DeAngelo submitted a detailed affidavit, stating clearly and unequivocally as follows:

> **I never spoke with Plaintiff while she was in A-Seg from September 11, 2011 to October 9, 2011 and I never saw her on the cell floor and she never complained to me that she needed medical care or treatment.** If I had seen Plaintiff and Plaintiff requested medical treatment, I would have noted that in the A-Seg logbook, noted it on either or both the Segregation Checklists and SHURs, and made sure that the WHV health care staff were contacted and checked on Plaintiff. However, none of these actions were taken because I did not speak with Plaintiff or see her at her cell or have any personal interaction with her in A-Seg. The A-Seg logbooks, Segregation Checklists and SHURs do not support Plaintiff's claims, as she previously told this Court they would.

(*Id.* at Ex. 3, ¶15) (emphasis added).

The WHV daily log books that Moore indicated would support her allegations of DeAngelo's personal involvement in denying her requests for health care have also turned out to be a dead-end street for her. (Doc. #16 at 18)). DeAngelo provided the Court with sealed copies of the A-Seg daily logbooks at issue. (Doc. #59). The Court has reviewed these documents and finds no evidence supporting Moore's allegation that she spoke with DeAngelo – whether about her pelvic pain or otherwise – during her second stint in A-Seg. Although there are isolated references to DeAngelo making rounds in A-Seg during the relevant time, there is no suggestion

---

[6] Nowhere in Moore's complaint or amended complaint does she assert that she sent health care "kites" to DeAngelo. (Docs. #1, 23). And, DeAngelo states under oath that Moore did not do so, since health care kites are submitted only to health care staff. (Doc. #56 at Ex. 3, ¶¶7-9). Thus, Moore's allegation that DeAngelo was deliberately indifferent to her serious medical needs stems only from this one purported conversation.

13

that DeAngelo and Moore actually interacted with each other.[7]

In her response brief, Moore points to entries made on the Segregation Checklists and SHURs – which were attached to DeAngelo's motion (Doc. #56 at Ex. 3, Atts. A, D) – as evidence that DeAngelo submitted false testimony in her sworn affidavit and that she did, in fact, make "several rounds on plaintiff's cell where she verbally acknowledged her once telling plaintiff she would not be leaving the seg cell for medical attention." (Doc. #70 at 8). A review of the pages referenced by Moore, however, simply does not provide support for this allegation. Viewing these documents in the light most favorable to Moore, it appears that, on a few occasions, DeAngelo might have made rounds on Moore's A-Seg cell (among others). (*See, e.g.,* Doc. #56 at Ex. 3, Att. D). However, this does not establish that DeAngelo's sworn testimony is false, as there is no indication in these documents that DeAngelo ever spoke with Moore, let alone told her she would not be permitted to leave her cell for medical attention.

In sum, aside from Moore's own self-serving allegations – which were not raised in her grievance or original complaint – there is no evidence in the record supporting her assertion that DeAngelo knew of her purported medical needs and denied her medical care. As such, summary judgment is appropriate on Moore's Eighth Amendment claim against DeAngelo. *See, e.g., Moilanen v. Berghuis*, 2012 WL 5499851, at *10 (W.D. Mich. Nov. 13, 2012) (granting summary judgment for the defendants where plaintiff's "proofs fail[ed] to show subjective knowledge of his serious medical condition, whatever it was, by any of the named defendants"); *Butler v. City of Pontiac*, 2006 WL 2087627, at *6 (E.D. Mich. July 24, 2006) (plaintiff failed to establish the subjective component of her Eighth Amendment claim where there was no evidence

---

[7] This is true despite the fact that there is at least one example of a situation in which it was noted, in the daily logbook, that DeAngelo directed staff to enter a different prisoner's cell with healthcare staff for the purpose of assessing that prisoner's vital signs. There are no similar entries linking DeAngelo and Moore.

that any individual defendant "actually knew about [plaintiff's decedent's] condition and decided to ignore it").[8]

## II. RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendant DeAngelo's Motion for Partial Dismissal and Motion for Summary Judgment **[56]** be **GRANTED**.

Dated: November 17, 2014  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

---

[8] Moore also vaguely alleges in her amended complaint that DeAngelo "knew or should have known that staff constantly failed to utilize clinic area in the housing unit for segragated [sic] prisoners with serious medical needs, and staff regularly refused to escort prisoners to on-site health care clinic per policy 03.04.100(AAA) thereby creating a 'custom' of denying and or delaying medical attention." (Doc. #23 at ¶5). This argument fails, however, as Moore has not sufficiently alleged the existence of any custom or policy implemented by any of the MDOC Defendants. *See Jones v. Martin*, 9 F. App'x 360, 361 (6th Cir. 2001). Moreover, even if there existed such a "custom," as Moore suggests, the fact remains that she received medical treatment while in segregation, which belies such allegations. (*See* Doc. #74).

15

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 17, 2014.

> s/Eddrey O. Butts
> EDDREY O. BUTTS
> Case Manager